IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DIANE JAMES POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:12cv02-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Diane James Powell ("Powell"), applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3). Pursuant

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should affirmed.

## II. Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** Powell was 51 years old at the time of the administrative hearing. (R. 77). She has completed the tenth grade, and has her general equivalency diploma (GED). (R. 79). The ALJ concluded that Powell has severe impairments of "cervical degenerative

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

disc disease, hypertension, obesity, left knee arthrofibrosis, left shoulder pain, major depressive disorder, and insomnia related to depression." (R. 97). Her prior work experience includes work as a poultry deboner and fast food cook. (R. 103). Following the hearing, the ALJ concluded that the plaintiff could return to her past relevant work as a poultry deboner, and thus, she is not disabled. (R. 103). In the alternative, the ALJ concluded that there exists in the national economy other jobs that the plaintiff can perform, and thus, she is not disabled. (R. 104-05).

   **B. Plaintiff's Claims.** Powell presents three issues for the Court's review. As stated by Powell, they are as follows:

   1.   The Commissioner's decision should be reversed because the ALJ committed reversible error in finding that Ms. Powell is capable of performing light work when a prior ALJ decision found that Ms. Powell was only capable of performing sedentary work.

   2.   The Commissioner's decision should be reversed because the ALJ's finding that Ms. Powell is capable of performing light work is not supported by substantial evidence.

   3.   The Commissioner's decision should be reversed because the ALJ failed to give great weight to the opinion of Ms. Powell's treating physician, Dr. Fernando Lopez.

(Doc. # 12, Pl's Br. at 5, 7 & 11). It is to these issues that the court now turns.

## IV. Discussion

   A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1)

objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added).

**A. Prior Residual Functional Capacity (RFC) Assessment**. Powell first complains that the ALJ erred by failing to adopt an earlier RFC assessment that limited her to sedentary work. (Doc. # 12, Pl's Br. at 5). In a prior 2008 determination, the ALJ concluded that Powell could perform sedentary work. In the present action, the ALJ determined that Powell could perform work at the light exertional level. According to Powell, the doctrine of administrative *res judicata* required the ALJ to accept the prior ALJ's opinion "that Ms. Powell is limited to sedentary work including the ability to stand for a total of 1 hour in an 8 hour workday and the ability to walk for a total of 30 minutes during an 8 hour workday." (*Id*. at 7). The plaintiff is simply wrong.

> Administrative *res judicata* applies when the agency has made a "previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision [had] become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1); *see also Cash v. Barnhart*, 327 F.3d 1252, 1255 (11th Cir. 2003).

*McKinzie v. Commissioner of Social Security*, 362 Fed. Appx. 71, 73 (11th Cir. 2010). *See also Moreno v. Astrue*, 366 Fed. Appx. 23, 27 (11th Cir. 2010); *Luckey v. Astrue*, 331 Fed. Appx. 634, 638 (11th Cir. 2009).

In the context of a Social Security application, administrative *res judicata* only applies when the time periods at issue have been adjudicated. When an application for benefits involves an *unadjudicated* time period, *res judicata* will not apply, and the ALJ is not required to give preclusive effect to a prior RFC finding. *See McKinzie*, 362 Fed. Appx. at 72; *Moreno*, 366 Fed. Appx. at 27.

In her earlier application, Powell alleged disability beginning December 31, 2004. On March 17, 2008, the ALJ determined that Powell was not disabled. (R. 113-129). In the present application, Powell is seeking benefits for a period of disability beginning on March 18, 2009. (R. 75, 78). Consequently, "[b]ecause the factual time period for [Powell's] current application is different from her previous application, administrative *res judicata* does not apply." *Luckey*, 331 Fed. Appx. at 638.

**B. Residual Functional Capacity Assessment**.  Powell also complains that the because the ALJ concluded that she could perform light work, the ALJ necessarily found that she "perform the standing/walking requirement of 6 hours out of an 8 hour working day."

6

According to Powell, this determination is not supported by substantial evidence. (Doc. # 12, Pl's Br. at 9). In determining Powell's residual functional capacity, the ALJ said

> [a]fter careful review of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally stoop, kneel, crouch, crawl, balance, and climb stairs and ramps. She cannot climb ropes, ladders, or scaffolds. She can perform simple, routine, repetitive tasks. She can adapt to minimal changes in a work setting. She can have brief and superficial contact with the public. She can occasionally operate leg or arm controls.

(R. 99).

On October 6, 2010, Powell underwent a consultative physical evaluation by Dr. Keith Vanderzyl in which he found bilateral knee pain, etiology unestablished; low back pain, no established cause; bilateral shoulder pain, unestablished etiology; stiff neck, unestablished etiology; chronic low back pain, unestablished etiology; and stiffness in both wrists, etiology unestablished. (R. 605-18). Powell argues that Dr. Vanderzyl's evaluation does not support the ALJ's residual functional capacity finding that she can perform light work because Dr. Vanderzyl opines that she can sit for 6 to 8 hours in an 8 hour work day - he does not opine that she can also stand for that period of time. (Doc. # 12, Pl's Br. at 9). According to Powell, the ALJ should not have speculated on her ability to stand, and should have secured another consultative evaluation. The court disagrees. The ALJ fulfilled her obligation to secure a consultative physical examination. The plaintiff conveniently ignores Dr. Vanderzyl's memorandum regarding Powell's examination and his assessment.

There is an extreme inability to perform the medical source statement, ability

>to do work related activities because of [Powell's] highly theatrical nature and her inability to either walk, move joints, etc., almost none of the categories can be adequately filled out.

(R. 609).

To the extent that Powell complains that the ALJ improperly inferred from Dr. Vanderzyl's assessment that Powell could stand for 6 to 8 hours a day, the plaintiff's argument misses the mark. According to the plaintiff, because the ALJ concluded that she could perform light work, the ALJ must have also concluded that she could "perform the standing/walking requirement of 6 hours out of an 8 hour working day." (Doc. # 12, Pl's Br. at 9). Light work does not require that a claimant be able to stand for 6 hours during the work day. Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[A] job is in this category *when* it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. (emphasis added). Contrary to the plaintiff's assertion, a finding that Powell can perform light work does not equate to a finding that she must also stand for 6 hours. The regulation clearly delineates that "*when* a job requires a good deal of walking or standing," then it may rise to the level of light work. The fact that the ALJ concluded that Powell could perform light work does not correlate to a finding that she must also stand for 6 hours.[4]

---

[4] In the alternative, Powell argues that the ALJ must have relied on the opinion of a non-examining state agency medical consultant to determine her RFC. This argument is purely speculative and unpersuasive.

8

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The ALJ evaluated all the evidence before her which led her to conclude that the plaintiff can perform light work. It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Given this standard of review, the court concludes that the ALJ's residual functional capacity is consistent with the medical evidence as a whole as well as Powell's testimony about her impairments and abilities. In short, after a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Powell's residual functional capacity to perform light work.

**C. Treating Physician's Opinion**. Powell argues that the ALJ failed to properly evaluate the opinion of her treating psychiatrist, Dr. Lopez. (Doc. # 12, Pl's Br. at 12-13). According to the plaintiff, "the ALJ failed to give great weight to Ms. Powell's treating physician's opinion, without providing sufficient rationale for her failure to do so." (*Id*. at 12). In the alternative, Powell argues that the ALJ had a "duty to recontact [Dr. Lopez] to seek additional information as to the basis for his opinion." (*Id*. at 13).

9

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

However, there are limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).

The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

On November 3, 2009, Dr. Lopez completed a medical source statement assessing Powell's mental impairments. (R. 549-551). According to Dr. Lopez, Powell has extreme limitations in fifteen areas dealing with her ability to function in a work environment. (*Id.*) She has marked restrictions in two areas, and none of her restrictions are moderate or mild. (*Id.*) According to Dr. Lopez, Powell's impairments would be expected to last more than 12 months. (R. 551). Dr. Lopez also commented that "[t]he compounding effects of the medical and psychiatric problems are rending this patient unable to function adequately in the competitive job situation."[5] (*Id.*)

After reviewing the medical evidence, the ALJ acknowledged Dr. Lopez's opinion but discounted it as it was unsupported by his own medical records.

> On November 3, 2009, Dr. Lopez filled out mental residual functional capacity evaluation form (Exhibit B15F). Dr. Lopez opined that the claimant has

---

[5] Interestingly, from the differences in handwriting, it is clear that the comment is written by someone other than Dr. Lopez but there is no indication in the record as to who wrote the comment that Dr. Lopez signed.

11

marked and extreme limitations in many areas of functioning.  He opined that she has extreme impairment in her ability to get along with co-workers or peers, her ability to understand, remember, and carry out simple instructions, and her ability to maintain attention and concentration for extended time periods. (Exhibit B15F, pages 1-2).  The opinion of Dr. Lopez was given little weight because it is not consistent with either the longitudinal medical evidence or his own treatment records.  For instance, throughout the Spectracare treatment records it was noted that the claimant was active and attentive in her group sessions (Exhibit B16F).  These notations are inconsistent with an individual who would have extreme difficulties maintaining attention and concentration for extended periods (Exhibit B15F, page 2).  Dr. Lopez also diagnosed the claimant with moderate depression rather than severe or incapacitating depression, which would also be inconsistent with the way he filled out this form (Exhibit B8F).  Moreover, Dr. Lopez did not note such serious restrictions anywhere within his treatment records (Exhibit B16F and B8F).  In general, the claimant's mental health history has not consisted of hospitalizations, involuntary commitments, suicide attempts, or suicidal ideations (Exhibit B16F and B8F).  While there is some evidence that the claimant had an overdose in 2010, it was noted that she was not suicidal (Exhibit B17F, page 13).  Moreover, the claimant was not committed for psychological treatment after that event, and she did not seek continued psychological counseling at that time (Exhibit B17F).  Throughout the treatment records, it is noted that the claimant is taking her medication, has no side effects, and the counselor notes improvement in her demeanor (Exhibit B8F and B16F).

(R. 100-01).

The ALJ's decision to give Dr. Lopez's opinion little weight is supported by substantial evidence.  Powell testified that she goes to SpectraCare every three months.  (R. 83).  She also testified that while she cannot sleep, the medication for her nerves "be okay . . . [i]t keeps me a little calm."  (R. 83-84).  Finally, she testified that the main reason she cannot work is due to pain in her knees, left shoulder and back.  (R. 86).  Powell's own testimony does not support Dr. Lopez's assessment.

Moreover, treatment records from SpectraCare do not support Dr. Lopez's assessment of the severity of this impairment. For example, Powell presented to SpectraCare for an intake assessment on November 17, 2008. The assessment was completed by June Johnson, a licensed professional counselor. (R. 465-475). At that time, Powell was dressed appropriately, her affect was appropriate, and she was calm. (R. 470). While her mood was dysphoric and she was easily distracted, orientation, thought process, perception and speech were appropriate. (*Id*.) Powell was diagnosed with major depressive disorder, recurrent, *moderate* and insomnia. (R. 465, 475) (emphasis added). She was referred to outpatient group therapy twice a month; she was not referred for intensive or residential treatment. (R. 468). Powell's long range therapy goals were "to be more calm and have improved relationships." (R. 466).

Powell attended her first group therapy session on November 25, 2008. At that time, she was not on any medications. (R. 463). She was not suicidal or homicidal. (*Id*.) She "appeared to be happy," and she was active and attentive during the session. (*Id*.)

Powell saw Dr. Lopez on December 30, 2008. At that time, she was depressed. (R. 462). Nonetheless, Dr. Lopez indicated that her next appointment with him was in three months. (*Id*.) Dr. Lopez prescribed Celexa. (R. 560). Dr. Lopez next saw Powell on March 11, 2009. Her appearance was neat and her mood was euthymic. (R. 461). Dr. Lopez renewed Powell's prescription for Celexa, (R. 560), and scheduled her next appointment in three months. (R. 461). During this time, Powell did not attend any group therapy sessions.

On March 24, 2009, Powell attended a group therapy session. At that time, she reported that she was compliant on her medication. (R. 559). She was oriented, did not report suicidal thoughts, and was active in the session. (*Id*.) She "appeared to be happy and well groomed." (*Id*.). On April 14, 2009, Powell attended another group therapy session. (R. 558). Although she reported that she did not feel well, and that her nerves were bad, Powell was on time and well groomed. (*Id*.) Powell was active and attentive during the session even though she reported that she had difficulty concentrating. (*Id*.). On May 26, 2009, Powell attended a group therapy session and appeared happy, and well groomed. (R. 557).

On June 6, 2009, Powell saw Dr. Lopez. At that time, she was depressed, and her Celexa medication was causing her to itch. (R. 554). Dr. Lopez discontinued the Celexa medication, and prescribed Paxil instead. (R. 560). Dr. Lopez scheduled Powell's next appointment in September, 2009. (R. 554). On June 23, 2009, Powell attended a group therapy session in which she appeared sad. (R. 556). She reported problems at home with family, and financial difficulties. (*Id*.) Nonetheless, she was active and attentive during the session. (*Id*.) Powell "reported that when she is stressed she likes to go play bingo." (*Id*.)

Finally, Dr. Lopez saw Powell on September 8, 2009. At that time, Dr. Lopez noted that Powell may suffer from sleep apnea. (R. 553). He increased her Paxil prescription and also prescribed Doxepin. (R. 560).

Dr. Lopez completed the medical assessment form on November 3, 2009. He assessed

14

Powell with marked and extreme limitations based on five fifteen minute visits[6] with him, and four group therapy sessions, the last one four months earlier than his assessment. Moreover, there is no evidence in the treatment notes to indicate that Dr. Lopez attended or even saw Powell during those group therapy sessions. None of SpectraCare's treatment records indicate that Powell's depression was debilitating. Powell's own description of her activities does not support a conclusion that she is unable to function in a work setting to the degree determined by Dr. Lopez. Consequently, Dr. Lopez's treatment notes do not support the level of disability he attributes to Powell.

The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the treatment records for evidence supporting Dr. Lopez's assessment of Powell's ability to work, and she considered Powell's own testimony. Only then did the ALJ discount Dr. Lopez's opinion that Powell was disabled. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Lopez's opinion regarding the limitations caused by Powell's depression.

## V. Conclusion

This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815

---

[6] The intake assessment clearly demonstrates that Dr. Lopez was to see Powell once every three months for 15 minutes to assess her and monitor her medication. (R. 468)

F.2d 622 (11th Cir. 1987). The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled, and is due to be affirmed.

A separate order will be entered.

Done this 9th day of November 2012.

                                        /s/Charles S. Coody
                                   CHARLES S. COODY
                                   UNITED STATES MAGISTRATE JUDGE